MoKinney, J.,
delivered the opinion of the Court.
This was an action of ejectment for the recovery of a tract of land lying in Davidson County. Judgment was for the defendant, and the plaintiff prosecuted an appeal in error to this Court. Both parties derive title under one Samuel Holton, to whom the land formerly belonged.
It appears, that on the 18th September, 1847, said Hol-ton mortgaged said tract of land to one James Herrod, to secure the payment of a debt of several hundred dollars due from the former to the latter, with a power of sale, authorising Herrod, in the event the debt were not paid by the 25th of December, 1848, to sell the land, after forty days’ notice, and out of the proceeds to discharge the debt.
Holton, the mortgagor, died on the 5th of February, 1853, leaving the debt unpaid, and the mortgage in full force.
Instantly upon the death of Holton, who died intestate, administration on his estate was granted by the County Court of Davidson, to John W. Walker, who, on the 11th of February, 1853, six days after the death of his intestate, fdod his ex parte petition in the County Court, setting forth that the intestate was a free man of color; that he left no heirs or next of kin surviving him, entitled to succeed to his estate; that the estate was indebted to insolvency, its value not being more than $1,000, while the indebtedness amounted to some $1,200, and praying that *384 said land and a negro woman, owned by the intestate, should be sold to discharge said debts.
The petition ignores the existence of the mortgage before mentioned, altogether, and treats the land as the unencumbered estate of the intestate, although the mortgage was of record, having been duly proved and registered.
On the 9th of March, 1853, a sale of the land was ordered by the Court, for the payment of the alleged debt of the estate, without proof of the existence of any indebtedness against the estate, other.than simply a schedule of the pretended debts presented by the administrator.
On the 2d of April following, the land was sold to Charlton, the defendant in the present action of ejectment, and on the 11th day of April, the report and sale was confirmed, and a decree made divesting the title “out of Holton's estate,” and vesting it in the purchaser.
Thus, in the brief space of a little more than two months from the death of the intestate, this proceeding was commenced and consummated. And under the supposed title, thus acquired, Charlton, the defendant, took possession of, and claims the land in controversy.
Afterwards, namely, on the 10th of November, 1853, Herrod, the mortgagee, proceeded to sale of said land under the power of sale contained in the mortgage deed, and the same was regularly sold to tbe plaintiff, Parch-man, at the price of $505.00, and on the 2d of November, 1855, a deed of conveyance therefor, was executed to him, which was proved and registered in proper form; and upon said conveyance the present action is founded.
On the trial in the Circuit Court, and in the argument here, the sale of the land, by the order of the County Court, was assumed to be a proceeding under the Act of *385 1851-2, ch. 283, for the .administration of an insolvent estate; and in this view, the Court instructed the jury, that the sale by the mortgagee, under the power in the •deed, was void, and communicated no title to the purchaser.
This instruction is based upon a misconception of the facts, as well as of the law, of the case.
The proceeding was not, nor does' it even profess to have been, a proceeding under the Statute for the ad'ministration of the estate in the County Court.
In no one essential respect, does it conform to the 'requirements of that Net. So far as the record shows, •there never was-any suggestion made of the insolvency of the estate, as required by the 4th section. Nor was 'any order made upon the administration, to give notice 'by advertisement in some newspaper, for creditors to file their claims, as required by the 6th section. Neither does the petition, as is obvious from its frame, contemplate a ratable division of the assets among the 'creditors, as provided by the 2d section of the Act. '
If the proceeding can be referred to any Statute, it is to the Act of 1821, ch. 54, sec. 4. By this Act, after an administrator has exhausted the personal estate in the payment of debts, leaving 'just debts unpaid, he, or any bona fide creditor of the intestate, may apply to the Chancery or Circuit Court of the County where the lands of the intestate lie, for a sale thereof, or so much as may be necessary. But it must first be made satisfactorily to appear, that the personal estate has been exhausted in the payment of bona fide debts, and that the debts for the satisfaction of which the sale' is asked, are justly due and owing.
The proceeding in question falls quite as far shbrt of *386 complying with this latter Act, as with the Act regulating the administration of insolvent estates. By the Act of 1827, the County Court has no jurisdiction to decree a sale of land; and by the 5 th section, the proceeding under it is to be conducted as a suit in equity; and before a decree can be made for the sale of lands, the existence of a bona fide debt or debts, must first be satisfactorily established.
It is clear, therefore, that the sale of the land in controversy, under the order of the County Court, was simply void, being wholly without authority of law, the County Court having no jurisdiction, in such a case, to decree a sale of land.
But again: If the proceeding had been a regular proceeding under the Act for the administration of insolvent estates, while it is true that the County Court would have had jurisdiction, by the 14th section of the Act, to decree a sale of real estate, yet it is clear that the sale in the present case, would have been wholly inoperative to communicate any legal title to the purchaser.
By necessary construction, under the Act of 1851-2, the jurisdiction given to the County Court to sell land, must be confined to cases where the intestate died seized of the legal title, and cannot be extended to cases where he was seized of only a mere equity of redemption, or other equitable interest. In all such cases, under that Act, resort must be had to a Court of Equity.
Furthermore: It is altogether a mistaken conclusion, that the Statute regulating the administration of insolvent estates, was designed to effect in any manner whatever, valid prior liens, mortgages or securities, acquired by a creditor upon the property of the intestate, in his lifetime.
*387 The general principle applicable to assignment in cases of bankruptcy and insolvency, is, that the assignees take only such rights as the assignor or debtor had at the time of the assignment: 2 Story’s Eq. Jur., sec. 1038.
And so, under our Statute for the administration of insolvent estates, the general creditors can claim nothing more than such rights as this intestate possessed at the time of his death.
If the property of the intestate, or any portion of it, be subject to a valid prior lien, or incumbrance, by mortgage or otherwise, the incumbrancer, should be proceeded against in the appropriate forum, to the end, that if, after the discharge of the incumbrance, a surplus should remain, it might be applied to the benefit of the general creditors.
It may be, that the creditor, having a security by mortgage, or otherwise, upon property of the estate, might waive or surrender such security, for the benefit of the estate, and come in for a ratable division of the whole estate, with the other creditors, and having. elected to do so, he would certainly be bound thereby. But, clearly, he is not bound to do so, voluntarily. He has the right to trust to his security, fairly acquired in the life of the intestate. If it be adequate, he is safe ; and he can look to that source for the satisfaction of his debt.
If it be inadequate, it is his duty to take prompt steps to make his claim for the . residue of his debt, to the tribunal charged with the administration of the estate, and if he neglect to do so, in proper time, he must submit to the loss.
And if, on the other hand, the security be more *388 than adequate, the personal representative, or creditors of the intestate have a plain remedy against him, to avail themselves of the surplus.
But, it cannot be held, that his failure to come in voluntarily, and make himself a party to a proceeding, to which the parties in interest have not thought proper to make him a party, shall be allowed to prejudice his rights. '
Upon another distinct ground, the sale of the land would have been <svoid, in the present instance. Supposing the proceeding to have been regularly instituted and conducted under the law governing the administration of insolvent estates, and likewise supposing that the County Court had jurisdiction to sell a mere equitable interest in land, and that is, that from the allegation of the petition, that the intestate died without heirs, the legal consequence was, that the tract of land escheated to the State for the use of common schools.
And though it is true, that it would pass to the Commissioners of the common schools, subject to the debts and Habilites of the intestate, still, the Board of Commissioners, who are a body corporate, having an interest in the property, would have been an indispensible party to any proceeding for the sale of the intestate’s equitable interest in the land. And a sale, without having the Board of Commissioners a party, would be utterly void, as held in Hinkle vs. Shadden, 2 Swan, 46.
Hence, in every aspect of the case, the sale under the decree of the County Court, was void, and the plaintiff’s title to the land, must prevail.
Judgement reversed.